## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| YELISEY RABAEV, individually; | : | |
| GOLDIE RABAEV, individually; and | : | |
| YELISEY and GOLDIE RABAEV as parents and | : | CIVIL ACTION NO. |
| natural guardians of Y.R., a minor, and K.R., a minor | : | |
| 138 North 10th Ave | : | |
| Highland Park, NJ 08904 | : | |
| Plaintiffs, | : | |
| | : | COMPLAINT |
| v. | : | AND JURY TRIAL |
| | : | DEMANDED |
| CBH20 GENERAL PARTNER, LLC d/b/a | : | |
| CAMELBACK SKI CORPORATION | : | |
| 301 Resort Drive | : | |
| Tannersville, PA 18372 | : | |
| | : | |
| and | : | |
| | : | |
| CMBK RESORT HOLDINGS, LLC d/b/a | : | |
| CAMELBACK MOUNTAIN RESORT | : | |
| 301 Resort Drive | : | |
| Tannersville, PA 18372 | : | |
| | : | |
| and | : | |
| | : | |
| CMBK RESORT OPERATIONS, LLC d/b/a | : | |
| CAMELBACK MOUNTAIN RESORT | : | |
| 193 Resort Drive | : | |
| Tannersville, PA 18372 | : | |
| | : | |
| and | : | |
| | : | |
| KSL RESORTS CORPORATION | : | |
| 18575 Jamboree Road, Ste 500 | : | |
| Irvine, CA 92612-2545 | : | |
| | : | |
| and | : | |
| | : | |
| KSL CAMELBACK MANAGEMENT, LLC | : | |
| 193 Resort Drive | : | |
| Tannersville, PA 18372 | : | |
| | : | |
| and | : | |
| | : | |

EPT SKI PROPERTIES, INC.                          :
909 Walnut Street, Ste 200                        :
Kansas City, MO 64106-2003                        :
                                                  :
_____Defendants._____:

  Plaintiffs YELISEY RABAEV, individually; GOLDIE RABAEV, individually; and

YELISEY RABAEV and GOLDIE RABAEV, as parents and natural guardians of Y.R. a minor,

and K.R., a minor, by and through their attorneys Cohen, Placitella & Roth, P.C., present their

civil action Complaint against the Defendants and allege upon information and belief and at all

times relevant herein, as follows:

## PARTIES – PLAINTIFFS

  1.  Plaintiff Yelisey Rabaev was born on ███████████ .

  2.  Yelisey Rabaev resides at 138 North 10th Ave, Highland Park, NJ 08904 and is a

citizen of the state of New Jersey.

  3.  Yelisey Rabaev is the father and natural guardian of Y.R., a minor.

  4.  Yelisey Rabaev is the father and natural guardian of K.R., a minor.

  5.  Yelisey Rabaev brings this action on behalf of himself, individually, and as parent

and natural guardian of minor Plaintiffs Y.R. and K.R.

  6.  Plaintiff Goldie Rabaev was born on ███████████ .

  7.  Goldie Rabaev resides at 138 North 10th Ave, Highland Park, NJ 08904 and is a

citizen of the state of New Jersey.

  8.  Goldie Rabaev is the mother and natural guardian of Y.R., a minor.

  9.  Goldie Rabaev is the mother and natural guardian of K.R., a minor.

  10.  Goldie Rabaev brings this action on behalf of herself, individually, and as parent

and natural guardian of minor Plaintiffs Y.R. and K.R.

11.     Y.R., a minor, was born ███████████.

12.     Y.R. resides with his parents and natural guardians at 138 North 10th Ave, Highland Park, NJ 08904 and is a citizen of the state of New Jersey.

13.     K.R., a minor, was born ██████████.

14.     K.R. resides with her parents and natural guardians at 138 North 10th Ave, Highland Park, NJ 08904 and is a citizen of the state of New Jersey.

15.     Hereinafter, Yelisey Rabaev, Goldie Rabaev, Y.R., and K.R. are referred to collectively as "Plaintiffs".

**PARTIES – DEFENDANTS**

16.     CBH20 General Partner, LLC d/b/a Camelback Ski Corporation (hereinafter "CBH20") is a limited liability company, formed and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 301 Resort Drive, Tannersville, PA 18372.

17.     CMBK Resort Holdings, LLC, d/b/a Camelback Mountain Resort (hereinafter "CMBK Holdings") is a limited liability company, formed and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 301 Resort Drive, Tannersville, PA 18372.

18.     CMBK Resort Operations, LLC, d/b/a Camelback Mountain Resort (hereinafter "CMBK Operations") is a limited liability company, formed and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 193 Resort Drive, Tannersville, PA 18372.

19.     KSL Resorts Corporation ("KSL Resorts") is a California Corporation with a principal place of business located at 18575 Jamboree Road, Ste. 500, Irvine, CA 92612.

20.     KSL Camelback Management, LLC ("KSL Camelback") is a limited liability company, formed and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business at 193 Resort Drive, Tannersville, PA 18372.

21.     EPT Ski Properties, Inc. (hereinafter "EPT") is Missouri Corporation with a principal place of business at 909 Walnut Street, Ste 200, Kansas City, MO 64106-2003.

22.     Hereinafter, CBH20, CMBK Holdings, CMBK Operations, KSL Resorts, KSL Camelback, and EPT shall be referred to collectively as the "Camelback Defendants."

23.     At all times relevant herein, the Camelback Defendants jointly and/or severally owned, managed, controlled, leased, operated, maintained, and/or possessed real, commercial property located at or about 301 Resort Drive, Tannersville, PA, 18372, commonly known and referred to as "Camelback Mountain Ski Resort".

24.     At all times relevant herein, the Camelback Defendants jointly and/or severally owned, managed, controlled, leased, operated, maintained a Detachable Quad Chairlift 4-CLD-185 ET located on the Camelback Mountain Ski Resort property. The Detachable Quad Chairlift 4-CLD-185 ET associated with Plaintiffs' injuries is a ski lift that is commonly known as and will be referred to as the "Sullivan Express" throughout this Complaint.

25.     At all times relevant herein, each of the Camelback Defendants were employees, servants, agents, workmen and/or ostensible agents of each other and were acting within the course and scope of said employment and/or agency.

26.     At all times relevant herein, the Camelback Defendants acted by and through their employees, servants, agents, workmen and/or ostensible agents, who were acting within the course and scope of said employment and/or agency.

4

27.     At all times relevant herein, the Camelback Defendants regularly conducted business, marketed and advertised their winter ski and summer water sports resort in the counties comprising the Eastern District of Pennsylvania and upon information and belief derived significant revenue from patrons living in counties throughout the Eastern District.

## JURISDICTION

28.     This is a civil action seeking compensatory and punitive damages for injuries sustained by Plaintiffs while business invitees on the Camelback Defendants' Property.

29.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332, as Plaintiffs are citizens of New Jersey and Defendants are citizens of Pennsylvania, Missouri, and California creating diversity of citizenship.

30.     Venue in the Eastern District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391 because the Defendants, or at least one of the Defendants, is deemed to reside in the Eastern District of Pennsylvania because they have sufficient contacts with the Eastern District of Pennsylvania to subject it/them to personal jurisdiction in the Eastern District of Pennsylvania, should the Eastern District be a separate state.

31.     The amount in controversy exceeds $75,000 exclusive of interests and costs.

## FACTS

32.     The Camelback Defendants purchased a chair lift known as the Sullivan Express in or about 1995.

33.     The Sullivan Express was constructed on the Camelback Mountain Ski Resort Property in or about 1995 with 66 detachable chairs that hang from an overhead cable and are attached to the cable by a non-locked, detachable grip.

34.     Each chair on the Sullivan Express is designed to carry up to four passengers.

35.     At all times relevant herein, the Camelback Defendants and their Sullivan Express were Common Carriers.

36.     Prior to Plaintiffs' arrival at Camelback Mountain Ski Resort on March 21, 2021, patrons riding the Sullivan Express experienced violent shaking and swinging of the chairs on the Sullivan Express that was abnormal.

37.     The violent shaking and swinging would occur when the Sullivan Express would start moving again after being stopped.

38.     Upon information and belief, the most violent shaking and swinging of chairs would occur near the top of the Sullivan Express within the view of the lift operator and/or attendant.

39.     Upon information and belief, prior to Plaintiffs' injuries, patrons reported the violent shaking and swinging to one or more agents, employees, servants, and/or ostensible agents of the Camelback Defendants, including but not limited to the lift operator and/or attendant at the top of the Sullivan Express.

40.     Upon information and belief, on March 21, 2021, prior to Plaintiffs' injuries, the lift operator/lift attendant at the top of the Sullivan Express witnessed the violent shaking and swinging of the lift chairs.

41.     Despite having reports that the chairs on the Sullivan Express were violently shaking and swinging, and despite the lift operator/attendant having witnessed this shaking and swinging the Camelback Defendants outrageously, wantonly, willfully, and recklessly disregarded the safety of their patrons and failed to shut down, disable, and/or prevent riders from riding Sullivan Express and, instead, continued to permit and encourage patrons to utilize the Sullivan Express.

42.     On the afternoon of March 21, 2021, Plaintiffs and two additional family members arrived at Camelback Mountain Ski Resort.

43.     On March 21, 2021, Plaintiffs were business invitees at Camelback Mountain Ski Resort.

44.     Upon arrival to Camelback Mountain Ski Resort in the mid-afternoon of March 21, 2021, Plaintiffs changed into their ski gear and equipment.

45.     Between 3:00 and 3:30pm, Plaintiffs Yelisey Rabaev, K.R. and Y.R. sat on chair 62 of the Sullivan Express together for the sole purpose of being transported to the top of the mountain to ski back down.

46.     Upon information and belief, transportation via ski lift was the only way skiers, including Plaintiffs, could reach the top of the mountain.

47.     At or about the same time, Plaintiff Goldie Rabaev and her other two children sat a few chairs behind Plaintiffs Yelisey Rabaev, K.R. and Y.R. on the Sullivan Express for the sole purpose of being transported to the top of the mountain to ski back down.

48.     Near, but prior to reaching the top of the mountain, the Sullivan Express stopped, and when it started moving again the chairs on the Sullivan Express, including Plaintiffs' chairs, began to violently jerk and swing forward and backward and side to side in an "X" pattern.

49.     As the chairs swung violently in the "X" pattern, chair 62 detached from the Sullivan Express and Plaintiffs Yelisey Rabaev, K.R. and Y.R., along with chair 62, plummeted more than 20 feet to the ground.

50.     Emergency personnel responded to the scene and Plaintiffs Yelisey Rabaev, K.R. and Y.R. were taken by ambulance to Lehigh Valley Hospital – Mount Pocono for emergency medical care.

7

51.     Yelisey Rabaev and K.R. were then emergently transported to Lehigh Valley Hospital – Cedar Crest in Allentown, PA due to the severity of their injuries.

52.     Yelisey Rabaev was later transferred to Penn Presbyterian Medical Center in Philadelphia, PA for further treatment due to the severity of his injuries.

53.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, Plaintiff Yelisey Rabaev suffered severe and disabling injuries, some or all of which are permanent in nature, including but not limited to, status post fall from height, bilateral sacral fractures displaced zone 2, extensively comminuted bilateral fractures of the sacrum, numerous fractures extending to the sacral foramina bilaterally, right anterior column acetabular fracture, unstable pelvic fracture, lumbar pelvic dissociation, pubic symphyseal disruption, separation of pubic symphysis with comminuted slightly displaced fracture of the upper and inferior pubic rami with collection anterior to the pelvis suggestive of blood with high density contrast pooling suggestive of active bleed, right grade III kidney laceration, right perinephric and retroperitoneal hematoma, intramuscular hematoma of the right iliac muscle and distal psoas muscle, right proximal humerus fracture with displacement of lesser tuberosity, closed, full thickness subscapularis right tendon tear, traumatic hemarthrosis in his right shoulder, compression fracture of upper endplate of L1, avulsion fractures of right transverse processes of L2, L4, L5, comminuted right transverse process fracture at L5 extending to the right sacroiliac joint, non-displaced fracture of the posterior aspect of the right 11th rib, hemorrhagic shock, ADL and mobility deficits, postsurgical ileus, scrotal swelling and ecchymosis, enlarged left inguinal hernia, acute nearly occlusive calf vein deep vein thrombus noted in the left soleal veins, acute DVT of the right femoral and bilateral calf veins, blunt cardiac injury, acute blood loss anemia, and hypoxia.

54.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, Yelisey Rabaev was hospitalized for his injuries. He remained in the hospital for nearly three weeks and underwent multiple surgeries for his injuries prior to being admitted to an inpatient rehabilitation facility.

55.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, substantial monies and expenses for medical diagnosis and treatment of Yelisey Rabaev's injuries have been and will continue to be required, including but not limited to physical therapy, medicines, medical care, hospitalization, nursing care, and surgeries, and Plaintiffs Yelisey and Goldie Rabaev have in the past, and will in the future be compelled to expend various and diverse sums of money for medical treatment, equipment, rehabilitation and other services that may be necessary to accommodate Yelisey Rabaev's injuries and to assist him in performing the necessary activities of daily living, and this will continue for the rest of the life of Yelisey Rabaev.

56.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, Yelisey Rabaev has suffered and will in the future suffer pain, discomfort, emotional suffering, mental distress, inconvenience and loss of life's pleasures.  He has in the past and will continue to be prevented in the future from pursuing the usual activities, pursuits, duties, work and avocations.

57.     As a direct and proximate result of the Camelback Defendants' conduct, as described herein, Yelisey Rabaev has in the past and will in the future suffer physical and emotional harm related to the losses of bodily function and disability, disfigurement, embarrassment, humiliation and inconvenience all to his great detriment and loss.

58.     As a direct and proximate result of the Camelback Defendants' conduct, as described herein, Yelisey Rabaev has been disabled in the past and will continue to be disabled in the future from performing his usual duties, occupations and avocations with a consequent loss of past earnings and/or future earning capacity.

59.     As a direct and proximate result of the Camelback Defendants' conduct, as described herein, Yelisey Rabaev has in the past and will in the future suffer physical and emotional harm related to witnessing the severe injuries suffered by his children, the minor plaintiffs.

60.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, Plaintiff Y.R. suffered a closed displaced spiral fracture of the shaft of the right radius, and a closed displaced spiral fracture of the shaft of the right ulna, which required surgeries.

61.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, substantial monies and expenses for medical diagnosis and treatment of Y.R.'s injuries have been and may continue to be required, including but not limited to physical therapy, medicines, medical care, hospitalization, and surgeries, and Plaintiffs Yelisey and Goldie Rabaev have in the past, and may in the future be compelled to expend various and diverse sums of money for medical treatment, equipment, rehabilitation and other services that may be necessary to accommodate Y.R.'s injuries.

62.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, Y.R. has suffered and will in the future suffer pain, discomfort, emotional suffering, mental distress, inconvenience and loss of life's pleasures.  He has in the past and may continue to be prevented in the future from pursuing the usual activities, pursuits, duties, work and

avocations of childhood and adulthood.

63.     As a direct and proximate result of the Camelback Defendants' conduct, as described herein, Y.R. has in the past and will in the future suffer physical and emotional harm related to the losses of bodily function and disability, disfigurement, embarrassment, humiliation and inconvenience all to his great detriment and loss.

64.     As a direct and proximate result of the Camelback Defendants' conduct, as described herein, Y.R. has in the past and will in the future suffer physical and emotional harm related to witnessing the severe and disabling injuries suffered by his father.

65.     As a direct and proximate result of all defendants' conduct as described herein, Plaintiff K.R. suffered multiple pulmonary contusions and a right upper lobe pneumothorax, requiring hospitalization.

66.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, substantial monies and expenses for medical diagnosis and treatment of K.R.'s injuries have been and may continue to be required, including but not limited to medicines, medical care, and hospitalization, and Plaintiffs Yelisey and Goldie Rabaev have in the past, and may in the future be compelled to expend various and diverse sums of money for medical treatment and other services that may be necessary to accommodate K.R.'s injuries.

67.     As a direct and proximate result of the Camelback Defendants' conduct as described herein, K.R. has suffered and will in the future suffer pain, discomfort, emotional suffering, mental distress, inconvenience and loss of life's pleasures.  She has in the past and may continue to be prevented in the future from pursuing the usual activities, pursuits, duties, work and avocations of childhood and adulthood.

68.     As a direct and proximate result of the Camelback Defendants' conduct, as described herein, K.R. has in the past and will in the future suffer physical and emotional harm related to witnessing the severe and disabling injuries suffered by her father.

69.     As a direct and proximate result of the Camelback Defendants' conduct, as described herein, Plaintiff Goldie Rabaev has been deprived of the assistance, society, companionship and consortium of her husband, Yelisey Rabaev all to her damage and loss, all of which may be permanent.

## COUNT I – NEGLIGENCE
### (Plaintiffs v. Camelback Defendants)

70.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

71.     The Camelback Defendants owed Plaintiffs a duty of care to protect them from unsafe conditions on their property that were known or could have been discoverable by the Camelback Defendants.

72.     The Camelback Defendants individually and by and through their actual, authorized, and/or apparent agents, servants, and/or employees, were wanton, willful, reckless, grossly negligent, and/or negligent in the purchase, installation, maintenance, and operation of the Sullivan Express used to transport Yelisey Rabaev, Y.R., and K.R. on March 21, 2021, in one or more of the following particular respects:

   a.   Failure to adequately, appropriately, properly, reasonably, and timely ensure the Sullivan Express, including component parts, were safe for use;

   b.   Failure to timely, appropriately and properly inspect the Sullivan Express and its component parts;

   c.   Failure to maintain the Sullivan Express and its component parts in a reasonably safe condition;

d.  Failure to maintain the Sullivan Express and its component parts in good repair;

e.  Failure to adequately, appropriately, properly, and reasonably operate the Sullivan Express;

f.  Failure to adequately, appropriately, properly, safely, and reasonably transport riders/patrons, including plaintiffs, on the Sullivan Express;

g.  Failure to ensure all component parts were safe, appropriate, and suitable for use on and/or with the Sullivan Express;

h.  Failure to ensure the chairs would not detach from the Sullivan Express while riders/patrons were on the chairs;

i.  Failure to adequately, appropriately, properly, reasonably, and timely disable the Sullivan Express when the Camelback Defendants were aware of the dangerous condition of the Sullivan Express on and before March 21, 2021;

j.  Failure to adequately, appropriately, properly, reasonably, and timely shut the Sullivan Express down when the Camelback Defendants should have been aware of the dangerous condition of the Sullivan Express and before March 21, 2021;

k.  Failure to adequately, appropriately, properly, reasonably, and timely inspect the Sullivan Express and its component parts;

l.  Failure to adequately, appropriately, properly, reasonably, and timely test the Sullivan Express, including all component parts, to determine the cause of the violent shaking and swinging of the lift chairs;

m.  Failure to shut the Sullivan Express down and prevent patrons from riding the Sullivan Express until the cause of the violent shaking and swinging of the lift chairs could be determined and corrected;

n.  Failure to adequately, appropriately, properly, reasonably, and timely test the Sullivan Express, including all component parts, to ensure the lift was safe for use by patrons/riders; and

o.  Failure to warn patrons, including Plaintiffs, that the Sullivan Express was not safe for use.

73.  As set forth above, the Camelback Defendants had, undertook and/or assumed a duty of care to Yelisey Rabaev, Y.R., and K.R. and to avoid harm to them, which duty was breached by Defendants.

74.     Yelisey Rabaev, Y.R., and K.R. relied on the duty of care owed by Camelback Defendants.

75.     Yelisey Rabaev, Y.R., and K.R. could not have known of the dangers the Sullivan Express posed.

76.     The Camelback Defendants continued to operate the Sullivan Express after they had actual knowledge of the violent shaking and swinging of the ski lift chairs, which posed a significant risk to riders like Yelisey Rabaev, Y.R., and K.R. and failed to take any actions to correct the violent shaking and swinging, which could have, and should have, included discontinuing use of the Sullivan Express, inspecting the Sullivan Express, and shutting down the Sullivan Express until it was safe for use.

77.     Camelback Defendants breached their duty of care to Yelisey Rabaev, Y.R., and K.R. through its wanton, willful, outrageous, reckless, grossly negligent, and negligent actions and omissions when they failed to act on their knowledge of the dangers posed by the Sullivan Express prior to the transport Yelisey Rabaev, Y.R., and K.R..

78.     Despite knowing that the Sullivan Express was dangerous and imposed a significant risk of severe bodily injury to riders/patrons, the Camelback Defendants did not take any action to correct or shut down the Sullivan Express and knowingly exposed its patrons, including Yelisey Rabaev, Y.R., and K.R., to a known increased risk of harm of bodily injury.

79.     The failure of the Camelback Defendants to shut down, inspect, and/or take any action to address the violent shaking and swinging of the ski lift chairs on the Sullivan Express, was outrageous, wanton, willful, and in reckless regard to the safety and well-being of users, such as Yelisey Rabaev, Y.R., and K.R., as this conduct consciously disregarded the significantly

increased risk of bodily injury and/or death to its riders/patrons, including Yelisey Rabaev, Y.R., and K.R.

80.     The careless, wanton, willful, outrageous, reckless, grossly negligent, and negligent conduct of the Camelback Defendants increased the risk of harm and was a substantial factor in causing and was a factual cause of the injuries and damages suffered by Yelisey Rabaev, Y.R., and K.R., as set forth more fully above.

81.     The Camelback Defendants acted with reckless indifference to the increased risk of harm under the circumstances.

82.     As a direct and proximate result of the outrageous, wanton, willful, reckless, tortious, grossly negligent, and negligent conduct of the Camelback Defendants, as set forth herein, Yelisey Rabaev, Y.R., and K.R. were catastrophically injured and sustained severe pain, suffering, disability, and impairment as described more fully above.

83.     The conduct of the Camelback Defendants described herein, was aggravated by the outrageous, wanton, willful, and reckless disregard to the safety and well-being of users, including Yelisey Rabaev, Y.R., and K.R., for which the law allows, and Plaintiffs seek the imposition of punitive damages.

84.     Plaintiffs claim all damages recoverable under the law, including compensatory damages and punitive damages, and as described below in their prayer for relief.

### COUNT II – COMMON CARRIER LIABILITY
### (Plaintiffs v. Camelback Defendants)

85.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

86.     As a common carrier, the Camelback Defendants owed Plaintiffs the highest duty of care in carrying riders/patrons safely from the bottom of the mountain to the top of the mountain.

87.     The Camelback Defendants individually and by and through their actual, authorized, and/or apparent agents, servants, and/or employees, were wanton, willful, reckless, grossly negligent, and/or negligent by failing to ensure the safe transport of its riders/patrons on the Sullivan Express, namely Yelisey Rabaev, Y.R., and K.R., on March 21, 2021, in one or more of the following particular respects:

    a. Failure to adequately, appropriately, properly, safely, and reasonably transport riders/patrons, including plaintiffs, on the Sullivan Express;

    b. Failure to adequately, appropriately, properly, and reasonably ensure the safety of its riders/patrons, including Plaintiffs, when they were being transported by the Sullivan Express;

    c. Failure to adequately, appropriately, properly, and reasonably operate the Sullivan Express in a safe manner;

    d. Failure to adequately, appropriately, properly, and reasonably protect its riders/patrons from unreasonable risk of physical harm;

    e. Failure to adequately, appropriately, properly, and reasonably protect its patrons/riders against the unreasonable, but known, risks associated with the violent shaking and swinging of the chairs;

    f. Failure to ensure all component parts were safe, appropriate, and suitable for use on and/or with the Sullivan Express;

    g. Failure to ensure the chairs would not detach from the Sullivan Express while riders/patrons were on the chairs;

    h. Failure to adequately, appropriately, properly, reasonably, and timely disable the Sullivan Express when the Camelback Defendants were aware of the dangerous condition of the Sullivan Express on and/or before March 21, 2021;

    i. Failure to adequately, appropriately, properly, reasonably, and timely shut the Sullivan Express down when the Camelback Defendants should have been aware of the dangerous condition of the Sullivan Express and before March 21, 2021;

    j. Failure to adequately, appropriately, properly, reasonably, and timely inspect the Sullivan Express, including its component parts;

k.  Failure to adequately, appropriately, properly, reasonably, and timely test the Sullivan Express, including its component parts, to determine the cause of the violent shaking and swinging of the lift chairs;

l.  Failure to shut the Sullivan Express down and prevent patrons from riding the Sullivan Express until the cause of the violent shaking and swinging of the lift chairs could be determined and corrected;

m.  Failure to adequately, appropriately, properly, reasonably, and timely test the Sullivan Express, including all component parts, to ensure the lift was safe for use by riders/patrons; and

n.  Failure to warn patrons, including Plaintiffs, that the Sullivan Express was not safe for use.

88.  As set forth above, the Camelback Defendants, as common carriers, undertook and/or assumed a heightened duty of care to Yelisey Rabaev, Y.R., and K.R. and to avoid harm to them, which duty was breached by Defendants.

89.  Yelisey Rabaev, Y.R., and K.R. relied on the heightened duty of care owed by Camelback Defendants.

90.  Camelback Defendants breached their common carrier duty of care to Yelisey Rabaev, Y.R., and K.R. through their outrageous, wanton, willful, reckless, grossly negligent, and negligent conduct when they failed to act on their knowledge of violent swinging and shaking of the chairs prior to the transport Yelisey Rabaev, Y.R., and K.R., and thus failed to protect them against the aforementioned unreasonable risks of bodily injury.

91.  As a direct and proximate result of Camelback Defendants' outrageous, wanton, willful, reckless, grossly negligent, and/or negligent conduct, as set forth herein, Yelisey Rabaev, Y.R., and K.R.  were catastrophically injured and sustained severe pain, suffering, disability, and impairment.

92.  The conduct of the Camelback Defendants described herein, was aggravated by the outrageous, wanton, willful, willful, and reckless disregard to the safety and well-being of users,

including Yelisey Rabaev, Y.R., and K.R., for which the law allows, and Plaintiffs seek the imposition of punitive damages.

93.     Plaintiffs claim all damages recoverable under the law, including compensatory damages and punitive damages, and as described below in their prayer for relief.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiffs Yelisey Rabaev, Y.R., and K.R. v. Camelback Defendants)

94.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

95.     The Camelback Defendants' conduct described herein placed Yelisey Rabaev, Y.R., and K.R. in continual fear of physical harm and caused them severe emotional distress.

96.     As a direct result of the Camelback Defendants' conduct described herein, Yelisey Rabaev, Y.R., and K.R. sustained shock and injury to their nerves and nervous system and other severe and serious injuries, all of which are or may be permanent in nature.

97.     As a direct result of the Camelback Defendants' conduct, Yelisey Rabaev, Y.R., and K.R. have suffered and will continue to suffer great pain, embarrassment, mental anguish and loss of the enjoyment of life.

98.     As a direct result of the Defendants' conduct, Yelisey Rabaev, Y.R., and K.R. have expended and will be required to expend large sums of money for medical services and treatment of the injuries described above.

99.     Plaintiffs claim all damages recoverable under the law, including compensatory damages and punitive damages, and as described below in their prayer for relief.

**COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (BYSTANDER)**
**(Plaintiffs Yelisey Rabaev, Y.R., and K.R. v. Camelback Defendants)**

100.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

101.    Yelisey Rabaev, the father of Y.R. and K.R., was on the subject ski lift chair at the time of the incident and observed the chair fall and saw his children falling through the air to the ground below and the severe physical injuries sustained by his children.

102.    Likewise, Y.R. and K.R., children of Yelisey Rabaev, were on the subject ski lift chair at the time of the incident and observed the chair fall and saw their father falling through the air to the ground below and the severe physical injuries sustained by their father.

103.    As a result the Camelback Defendants' conduct and witnessing their immediate family members fall more than 20 feet above the ground and sustain severe injuries, some or all of which are permanent, and as a result of the negligence and recklessness of the Defendants, Plaintiffs Yelisey Rabaev, Y.R., and K.R. suffered injuries and losses that include emotional and psychological harm, mental and physical anguish and emotional and physical pain and suffering, shock and loss of life's pleasures.

104.    Plaintiffs claim all damages recoverable under the law, including compensatory damages and punitive damages, and as described below in their prayer for relief.

**COUNT V – LOSS OF CONSORTIUM**
**(Plaintiff Goldie Rabaev v. Camelback Defendants)**

105.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

106.    As a direct and proximate result of the conduct of the Defendants, which caused the aforementioned injuries and losses to Plaintiff Yelisey Rabaev, Plaintiff Goldie Rabaev has

been, and will in the future be deprived of services, society, and conjugal fellowship of her husband.

107.     Plaintiff Goldie Rabaev claims all damages recoverable under the law as described below in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against all Defendants jointly, severally, and/or in the alternative, for compensatory damages for mental and physical injuries, pain, suffering, and disabilities; emotional distress; embarrassment; humiliation; loss of enjoyment of life's pleasures; past and future medical expenses; past lost earnings and loss of future earning capacity; punitive damages; attorneys' fees pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law; costs of suit as provided by law in excess of $75,000.00; and such other and further relief as is reasonable and just.

By:     _____
        Stewart L. Cohen, Esquire
        PA I.D. No.: 25448
        Elizabeth M. Amesbury, Esquire
        PA I.D. No.: 320603
        Cohen, Placitella & Roth, P.C.
        2001 Market Street, Suite 2900
        Philadelphia, PA 19103
        Tel: 215-567-3500
        *Counsel for Plaintiffs*

Date: February 18, 2022

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues.

By: _____

Stewart L. Cohen, Esquire
PA I.D. No.: 25448
Elizabeth M. Amesbury, Esquire
PA I.D. No.: 320603
Cohen, Placitella & Roth, P.C.
2001 Market Street, Suite 2900
Philadelphia, PA 19103
Tel: 215-567-3500
*Counsel for Plaintiffs*

Date: February 18, 2022