IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YELISEY RABAEV individually; GOLDIE RABAEV, individually; and YELISEY and GOLDIE RABAEV as parents and natural guardians of Y.R., a minor, and K.R., a minor, <br><br> v. <br><br> CBH20 GENERAL PARTNER, LLC d/b/a CAMELBACK SKI CORPORATION, et al. | : <br> : <br> : <br> : CIVIL ACTION <br> : <br> : NO. 22-0634 <br> : <br> : <br> : <br> : |

### MEMORANDUM

**Chief Judge Juan R. Sánchez**                                                                  **April 22, 2022**

Defendants move to transfer this case to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Because Defendants fail to establish that the convenience of the parties and the interests of justice weigh strongly in favor of transfer, the motion shall be denied.

### BACKGROUND

On March 21, 2021, Plaintiffs Yelisey Rabaev, his wife, Goldie Rabaev, and their children, K.R., Y.R., and their two other children, went to Camelback Mountain Ski Resort in Tannersville, Pennsylvania. Compl. ¶¶ 23, 42. Plaintiffs are residents of Highland Park, New Jersey. *Id.* ¶¶ 2, 7, 12, 14. Prior to March 21st, Yelisey purchased six 2021-2022 Camelback Season Value Passes to gain access to the ski resort for himself, his wife and the four children. Rabaev Aff. ¶ 3. To the best of his knowledge and recollection, Yelisey did not purchase the tickets at Camelback's ticket counter. *Id.* ¶ 15.

1

Between 3:00 p.m. and 3:30 p.m. on March 21st, Yelisey, K.R., and Y.R. sat on chair 62 of the Sullivan Express chairlift at Camelback to be transported to the top of the mountain. Goldie and their two other children sat in a chair further behind them. Compl. ¶¶ 45-47. Near the top of the mountain, chair 62 began to "violently jerk and swing forward and backward and side to side in an 'X' pattern." *Id.* ¶¶ 45, 48. Afterwards, chair 62 detached, causing Yelisey, K.R., and Y.R. to fall twenty feet to the ground. *Id.* ¶ 49. They were transported by ambulance to Lehigh Valley Hospital – Mount Pocono. *Id.* ¶ 50. The hospital then transferred Yelisey and K.R. to Lehigh Valley Hospital – Cedar Crest in Allentown, Pennsylvania. *Id.* ¶ 51. Yelisey was subsequently transferred to Penn Presbyterian Medical Center in Philadelphia, Pennsylvania, where he spent three weeks and underwent several surgeries. *Id.* ¶ 52. Yelisey "suffered severe and disabling injuries, some or all of which are permanent in nature," including a loss of bodily function. *Id.* ¶¶ 53, 57.[1] Plaintiff Y.R. sustained a "closed displaced spiral fracture of the shaft of the right radius,

---

[1] Plaintiff Yelisey's injuries include:

> [B]ilateral sacral fractures displaced zone 2, extensively comminuted bilateral fractures of the sacrum, numerous fractures extending to the sacral foramina bilaterally, right anterior column acetabular fracture, unstable pelvic fracture, lumbar pelvic dissociation, pubic symphyseal disruption, separation of pubic symphysis with comminuted slightly displaced fracture of the upper and inferior pubic rami with collection anterior to the pelvis suggestive of blood with high density contrast pooling suggestive of active bleed, right grade III kidney laceration, right perinephric and retroperitoneal hematoma, intramuscular hematoma of the right iliac muscle and distal psoas muscle, right proximal humerus fracture with displacement of lesser tuberosity, closed, full thickness subscapularis right tendon tear, traumatic hemarthrosis in his right shoulder, compression fracture of upper endplate of L1, avulsion fractures of right transverse processes of L2, L4, L5, comminuted right transverse process fracture at L5 extending to the right sacroiliac joint, non-displaced fracture of the posterior aspect of the right 11th rib, hemorrhagic shock, ADL and mobility deficits, postsurgical ileus, scrotal swelling and ecchymosis, enlarged left

and a closed displaced spiral fracture of the shaft of the right ulna, which required surgeries." *Id.* ¶ 60. Plaintiff K.R. experienced "multiple pulmonary contusions and a right upper lobe pneumothorax, requiring hospitalization." *Id.* ¶ 66.

As a result of the incident, on February 18, 2022, Plaintiffs initiated this civil action in the Eastern District of Pennsylvania against Defendants CBH20 General Partner, LLC, CMBK Resort Holdings, LLC, CMBK Resort Operations, LLC, KSL Resorts Corporation, and KSL Camelback Management, LLC, and EPT Ski Properties, Inc. ("Camelback Defendants"). The Plaintiffs' complaint alleges negligence, common carrier liability, negligent infliction of emotional distress, and loss of consortium. Defendants now move to transfer the case to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

**LEGAL STANDARDS**

"In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Under § 1404(a): "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of transferring venue "is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van*

---

       inguinal hernia, acute nearly occlusive calf vein deep vein thrombus noted in the left soleal veins, acute DVT of the right femoral and bilateral calf veins, blunt cardiac injury, acute blood loss anemia, and hypoxia.

Compl. ¶ 53.

*Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The Defendants, as the moving parties, bear the burden of establishing the need for transfer. *Jumara*, 55 F.3d at 879.

As a threshold matter, the Court must first determine whether venue is proper in either or both of the Eastern and Middle Districts of Pennsylvania. *Id.* at 878. Under 28 U.S.C. § 1391(b), venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Under 28 U.S.C. § 1391(c)(2), a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Further, "in a State which has more than one judicial district . . . such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d).

**DISCUSSION**

Personal jurisdiction can be general or specific. *Hepp v. Facebook*, 14 F. 4th 204, 207 (3d Cir. 2021). "General jurisdiction extends to all claims against a defendant and exists where a company is essentially at home." *Id.* Specific jurisdiction requires a two-pronged analysis: (1) "there must be purposeful availment: minimum contacts with the [district] that show the defendant

4

took a deliberate act reaching out to do business in that [district]," and (2) "the contacts must give rise to – *or* relate to – plaintiff's claims." *Id.* (emphasis added). The "or" "contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Under the first prong, the plaintiff "must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum [district]." *Id.* at 1025. "For the contacts to satisfy the second prong, there must be 'a strong relationship among the defendant, the forum, and the litigation.'" *Hepp*, 14 F. 4th at 207 (citing *Ford Motor Co.*, 141 S. Ct. at 1028).

In this case, venue is proper in the Middle District because the incident giving rise to the claim occurred at the Camelback resort, which is situated in the Middle District. *See* 28 U.S.C. § 1391(b)(2). Venue is also proper in the Eastern District because the Camelback Defendants are subject to the Court's specific personal jurisdiction here. Camelback exploited the Philadelphia market in the Eastern District by engaging in pay per click advertising that targets the Philadelphia area. Pl's Mem. Opp'n to Defs.' Mot. Transfer, ECF 11, Exh. 3, ¶¶ 1-4. Camelback also reached out to the Eastern District to obtain business by providing directions to the resort from New Jersey and advertising that they are "only two hours away" from Philadelphia. *Id.* Exhs. 2, 4, 5. The contacts relate to the Plaintiffs' claims because there is a strong relationship between Camelback, the Eastern District, and the litigation. After the incident, both Plaintiffs Yelisey Rabaev and K.R. underwent medical treatment in hospitals within the Eastern District because the hospital in the Middle District was not equipped to care for their injuries. Compl. ¶¶ 51-52.

In support of their motion to transfer, the Defendants raise the forum selection clause in the "Camelbeach Season Pass Contract and Agreement Not to Sue" ("Camelbeach Contract"), which they assert Plaintiffs Yelisey Rabaev and Goldie Rabaev signed on March 7, 2021, two

5

weeks before the incident. Def.'s Reply Br., ECF 17, Exhs. A & B.[2] A contractually valid forum selection clause must be given "controlling weight in all but the most exceptional circumstances. *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013). In diversity cases, federal law determines the validity of a forum selection clause. *Jumara*, 55 F.3d at 877-78. However, "[t]he question of the scope of a forum selection clause is one of contract interpretation, and is thus governed by state law." *In re McGraw-Hill Glo. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018).

"The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties." *Lesko v. Frankford Hosp.*, 15 A.3d 337, 342 (Pa. 2011). "Where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended." *Id.* (citing *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982). "When interpreting agreements containing clear and unambiguous terms, [courts] need only examine the writing itself to give effect to the parties' intent." *State Farm Fire & Cas. Co. v. Phila. Elec. Co.*, 54 A.3d 921, 928 (Pa. Super. Ct. 2012)." The terms of a contract are ambiguous if the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense." *Id.* "[I]n determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be

---

[2] In Defendants' motion to transfer, Defendants originally alleged Plaintiffs had notice of Camelback's forum selection clause through their Ski Area Use Tickets as well as through the posted forum selection clauses at the ticket counter and around the resort. Defs.' Mot. Transfer, ECF 10, ¶ 6. In the Defendants' reply brief in supplement and support of their motion to transfer venue, Defendants acknowledged that Plaintiffs had season passes, not Ski Area Use Tickets. Def.'s Reply Br., ECF 17, at 2. The season passes do not contain the forum selection clause language on the back of them. *Id.*; ECF 11, Exh. 7. Moreover, the forum selection clause Defendants assert was posted around the resort was revised on May 13, 2021. *See* ECF 10, Exh. C. As the incident underlying Plaintiffs' claim occurred on March 21, 2021, the Plaintiffs could not have had notice of the posted forum selection clause in the Defendants' exhibits. *See* Compl. ¶ 43.

given effect . . . [courts] will not interpret one provision of a contract in a manner which results in another portion being annulled." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647-48 (2009).

Although the Defendants failed to authenticate the Camelbeach Contract containing the forum selection clause in conformance with Fed. R. Evid. 901(a), a court can consider exhibits that would not be admissible in evidence in a motion to transfer venue. *See Bombin v. Sw. Airlines Co.*, 529 F. Supp. 3d 411, 417 (E.D. Pa. 2021) (citing *Roller v. Red Payments LLC*, No. 18-1834, 2019 WL 3802031, at *4 (E.D. Pa. 2019)) ("[I]n deciding this motion [to transfer venue], a court is not limited to the pleadings, and may consider affidavits and other evidence."); *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 730 (3d Cir. 1982) (considering affidavit in motion to dismiss for improper venue even though affidavit is hearsay evidence); *see also Saraceni v. MerschSource LLC*, No. 21-4947, 2022 U.S. Dist. LEXIS 16530, at *10-11 (E.D. Pa. 2022) (citing *Patterson v. Fed. Bureau of Investigations*, 893 F.2d 595, 604 (3d Cir. 1990)) (considering unauthenticated YouTube videos in jurisdictional analysis because Third Circuit permits sworn affidavits to establish jurisdiction, which are not admissible).

The Camelbeach Contract forum selection clause provides: "I agree that all disputes *arising under this contract* and/or from my use of the facilities and attractions at Camelback shall be litigated exclusively . . . in the United States District for the Middle District of Pennsylvania." ECF 17, Exhs. A & B (emphasis added). By its terms, the contract applies to Camelbeach's waterpark: In exchange for payment, "Camelback hereby grants the undersigned the privilege and license to use the rides and attractions at Camelback, (based on availability, no guarantee of pool lounge chairs), weather permitting, from the date of issuance through the end of the applicable summer seasons(s) during public summer season operating hours."

The terms of the contract are not ambiguous or susceptible to different constructions. Indeed, the terms and conditions of the contract include: "Children under 12 years old NOT ALLOWED in the Waterpark without a paying adult," and "Passholder must present pass card at the entrance gate to be scanned for entrance into the Waterpark." The Acknowledgement of Risks also contain risks associated with a waterpark: guests assume the risk of "slips and falls, risk of drowning, and other inherent risks associated with swimming and wading pools and other attractions, wet and dry, that present the risk of injury or death." The Camelbeach Contract clearly applies to the waterpark, not the ski resort. The Court therefore finds the forum selection clause does not inform whether transfer to the Middle District is appropriate because its scope does not extend to a suit arising from an incident with a ski lift chair.

Because venue is proper in both the Eastern and Middle Districts, the Court must next consider whether a transfer to the Middle District would be in the interest of justice. *See* 28 U.S.C. § 1404(a). Courts consider various private and public interests in deciding whether transfer is appropriate. *Jumara*, 55 F.3d at 879.[3] The private interests include: "plaintiff's forum preference[,] . . . the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses[,] . . . and the location of books and records." *Id.* at 879 (citations omitted). Public interests include: "the enforceability of the judgment, practical considerations that could make the trial easy,

---

[3] While the existence of a valid forum selection clause requires courts to analyze only the public interest factors, because the scope of the Camelbeach Contract forum selection clause does not extend to ski lift chairs, this Court is permitted to consider both private and public interest factors. *See Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (citing *Atl. Marin.*, 571 U.S. at 62-65) (stating when there is valid forum selection clause, courts "(1) must give no weight to the forum preferred by 'the party defying the forum-selection clause'; (2) must deem the private interests to 'weigh entirely in favor of the preselected forum' because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests").

expeditious, or inexpensive, . . . court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law." *Id.* at 879-80 (citations omitted). "A plaintiff's choice of forum is entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendants' forum." *Medina v. Haas*, No. 20-5019, 2021 WL 1088343, at *3 (E.D. Pa. 2021); *see also Snyder v. Bertucci's Rest. Corp.*, No. 12-5382, 2012 WL 6601384, at *2 (E.D. Pa. 2012) ("[A] plaintiff's choice of venue is of paramount consideration and should not be disturbed lightly.").

Here, the private interest factors weigh in favor of maintaining Plaintiffs' choice of forum in the Eastern District. While the incident giving rise to the Plaintiffs' complaint occurred in the Middle District of Pennsylvania, a jury site inspection of Camelback is unlikely because the Sullivan Express has undergone extensive repair since the incident. Pls.' Sur-Repl. Mem. in Opp'n, ECF 20, at 17. The scene of the accident is documented in photographs taken shortly after it occurred, and before these repairs took place. *Id.* These photographs can be provided to a jury with equal ease in both the Eastern and Middle Districts. *Id.* The Eastern District is also more convenient for the Plaintiffs because they live fifty miles closer to Philadelphia than to Scranton. ECF 11, at 16. Moreover, Yelisey and K.R. received medical treatment in the Eastern District. *Id.* Their physicians would be unable to serve as live causation and damages witnesses in the Middle District because they have obligations to their patients in Philadelphia and travel to the Middle District would be problematic. *Id.* In contrast, the factor weighing in favor of the Middle District is its convenience for Defendants. ECF 10, at 12. The Eastern District is two hours away from Defendants, while the Middle District is only forty minutes away. *Id.* The Defendants' liability witnesses who "likely reside in or near the Middle District" may also be inconvenienced by proceedings in the Eastern District. *Id.* at 10.

As for public considerations, a judgment would be equally enforceable in the Eastern and Middle Districts. ECF 10, at 12; ECF 11, at 17. The applicable law is also the same for the two districts. ECF 10, at 12. Both the Eastern and Middle Districts have an interest in deciding this controversy because, while the Middle District has an interest in deciding a case involving one of its businesses, Defendants advertise in the Eastern District and Plaintiffs received medical care in the Eastern District. *See,* ECF 10, at 12; ECF 11, at 18. Court congestion may weigh in favor of the Eastern District, as federal case statistics show civil cases take longer to resolve on average in the Middle District than the Eastern District. ECF 11, at 17-18.[4] Practical considerations also support venue in the Eastern District because Philadelphia has a greater ease of access to public transportation than Scranton. ECF 11, at 16. Further, jury selection would be more straightforward in the Eastern District because jurors may be more likely to have a connection to Camelback and the Camelback Defendants in the Middle District such that more potential jurors would have to be disqualified from serving. ECF 11, at 8; *see also* ECF 10, at 13. The Court therefore finds the public interest factors also favor the Eastern District.

**CONCLUSION**

The Court concludes the Defendants have not met their burden of establishing that the convenience of the parties and the interests of justice weigh strongly in favor of transferring this case to the Middle District and the Defendants' Motion to Transfer is denied.

An appropriate Order follows.

---

[4] *See Ventiera v. CMBK Resort Operations, LLC,* Civ. No. 21-2997 (E.D. Pa. Jan. 27, 2022) (citing U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2021, U.S. CTS. (2021), https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2021.pdf).

BY THE COURT:

Juan R. Sánchez

_____
Juan R. Sánchez,      C.J.